## In re McDONOUGH'S ESTATE

(Supreme Court, Appellate Division, Third Department. May 21, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§§ 109, 111*)—PAYMENT OF DEBTS—REIMBURSEMENT.

Funeral expenses and attorney's fees for procuring letters of administration are primary debts of the administratrix and not against the estate, though the administratrix cannot be compelled to distribute the funds of the estate without an allowance to her for so much of those items as meets the approval of the surrogate, and the executrix of the administratrix on settling her account occupies the same position.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 436, 448–462; Dec. Dig. §§ 109, 111.*]

2. EXECUTORS AND ADMINISTRATORS (§ 128*)—DEATH OF ADMINISTRATRIX—ACTS OF EXECUTRIX.

Where an administratrix died before settling the estate, payment of funeral expenses of the intestate and attorney's services in procuring letters of administration by her executrix was not an act of administration on the intestate's estate, but was a payment by the executrix of the debts of her testatrix, which, when approved by the surrogate, the executrix was entitled to deduct from the moneys due by the testatrix to the estate of the intestate.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 128.*]

3. EXECUTORS AND ADMINISTRATORS (§ 128*)—DEATH OF ADMINISTRATRIX—PAYMENT OF DEBTS.

Where an administratrix died before final settlement of the estate, and her executrix paid certain debts for which the administratrix would have been entitled to credit, it was immaterial that the executrix procured the funds from the intestate's bank account.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 128.*]

4. EXECUTORS AND ADMINISTRATORS (§ 318*)—DISTRIBUTION—ACCOUNTING.

Where the assets of certain estates were distributed between the parties whom the executrix understood were entitled to share therein, but by mistake no provision was made for an unknown heir, the distribution should be regarded as a family settlement, and only so much be required to be accounted for as was necessary to satisfy the claim of such heir.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 318.*]

Chester and Cochrane, JJ., dissenting.

Appeal from Surrogate's Court, Rensselaer County.

Judicial settlement of the estate of Ann McDonough, deceased. From a decree settling the accounts of Catherine McDonough, as administratrix of Ann McDonough, Ann E. Morton, personally and as executrix of Catherine McDonough, appeals. Modified and affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Thomas S. Fagan (H. D. Bailey, of counsel), for appellant.
O'Brien & Murray (M. L. Murray, of counsel), for respondent.

JOHN M. KELLOGG, J. At the death of Ann McDonough, October 20, 1904, she and her sisters, Elizabeth McDonough, Cath-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erine McDonough, and her niece, Ann E. Morton, the appellant, were residing together as one family; Ann apparently being the head of the family. They were all old ladies, the niece being about 69 years old. The house was the property of Ann individually or of her and the others. The furniture and personal property was formerly the property of the mother of the appellant Morton. There was on deposit in the name of Ann in savings banks $1,701.83. After the death of Ann, the remaining sisters and the niece continued to form the family until July 5, 1905, when Elizabeth died, and thereafter Catherine and her niece constituted the family, and they believed that they alone were entitled to the estate of Ann and Elizabeth, being unaware of the existence of the respondent Rebecca McDonough, a half-sister. Catherine, with funds belonging to her or to her and the appellant Morton, paid the doctor's bill and funeral expenses of Ann, amounting to $350. Letters of administration were issued to Catherine upon the estate of Ann in August, 1905, and shortly thereafter Ann's accounts in the savings banks were closed; the money being transferred to the individual credit of Catherine. This was done with the knowledge and action of Catherine and the appellant Morton. Catherine died October 4, 1905, leaving a last will and testament by which the appellant Morton is the sole executrix and legatee, and, after letters were issued to her as executrix, she paid the attorney $50 for his services in obtaining letters of administration to Catherine on the estate of Ann, and also the transfer tax of $216.42, which was assessed against her on account of her interest in Ann's estate, which sum apparently was based wholly or in a large part upon real estate received by her from Ann, and which in any event need not be considered here, as it was an item which should be paid by her personally, and not by Ann's estate. She also paid $100 to her attorney for services upon this accounting.

The funeral expenses and the attorney's bill were not primary debts against the estate of Ann, but were obligations existing against Catherine personally, but she could reimburse herself from the estate after the items were approved by the surrogate. Catherine could not have been compelled to distribute or pay over the funds of the estate without an allowance to her for so much of those items as met the approval of the surrogate; and her executrix occupies the same position. Those items and the doctor's bill have been approved by the surrogate, and there is no reason why they should not be credited to Catherine's executrix upon this accounting. The payment by the appellant Morton of some of those items after the death of Catherine was not an act of administration upon the estate of Ann, but was a payment by her of the debts of her testatrix, which payments, when approved by the surrogate, she is entitled to deduct from the moneys due by Catherine to the estate of Ann. It is immaterial whether Catherine took the money from Ann's bank account or from her own pocket with which she paid the doctor's bill and funeral expenses. They were disbursements upon account of estate, and must be allowed her. Catherine and the appellant Morton continued to reside as a family in substantially the same manner as during the lifetime of Ann

and Elizabeth. They acted together, and the taking of the moneys from the bank and putting the same in the private account of Catherine, while it could legally be done only by Catherine, was, in effect, the act of both, and was, in substance, an appropriation of the funds for the benefit of the family as it then existed, and, in effect, may be treated as a family settlement and adjustment of the estate between them. For all practical purposes, the estate was administered between all the parties whom the executrix understood were entitled to share therein, and it seems unnecessary and inequitable to compel the appellant Morton to raise the funds and turn the whole original estate over to the new administratrix, the only effect of which can be to make trouble and additional executors' and attorneys' fees. It is a needless formality under the circumstances of this case for the appellant Morton to pay these funds over to the new administratrix, and then for her to hand them back to the former less her commissions. In fact, Catherine and the appellant Morton have received a larger share from the estate than belonged to them, and they should only be required to pay over the excess. We should treat that done which the parties deemed done; that is, that the estate between the executrix and the appellant Morton was settled. In order that Rebecca may receive her share, the appellant Morton individually and as executrix must pay it. Catherine's acts were irregular, but were intended for the best interests of all concerned. If she had been right in assuming that only she and her niece were interested in the estate, no harm could follow; and it is only right and proper that so far as they are concerned to treat this as a family settlement which under proper circumstances is always favored, but the unknown next of kin cannot be prejudiced by their acts. It does not appear whether Elizabeth left a will or not, or whether she left debts or not, and therefore the share coming to her from Ann's estate cannot be treated as administered.

The decree therefore should be modified as follows:

(1) The above items should be credited to the executrix.

(2) Catherine and the appellant Morton should be treated as having received their one-quarter share of Ann's estate.

(3) The one-quarter share of Ann's estate belonging to Rebecca and the one-quarter share belonging to the estate of Elizabeth should be paid to the administratrix of Ann, to be disposed of according to law.

(4) The appellant Morton upon this accounting should be allowed full commissions on all moneys received and paid out, including the shares of herself and Catherine, and half commissions upon the sums she pays over to the administratrix of Ann.

(5) Costs in the Surrogate's Court should be allowed to the appellant Morton from the estate before the shares are ascertained; costs should be allowed the appellant Morton in this court to be deducted from the share of Rebecca in Ann's estate.

SMITH, P. J., and SEWELL, J., concur.

CHESTER, J. (dissenting). It appears that the existence of the half-sister, Rebecca, was not known to the other next of kin of Ann— her sisters, Catherine and Elizabeth, and her niece, the appellant, while these three were living together as one family, and the claim of the appellant appears to be that Ann's estate has been by mutual consent properly administered and settled out of court so far as these three are concerned, and that the payment of the expenses and the retention by the appellant of so much of the fund as she may be entitled to as next of kin of her deceased aunts should be approved by the surrogate as proper administration of the estate upon her making Rebecca, the respondent, good for the amount she is entitled to as one of the next of kin of Ann, including any share she may be entitled to in the estate of Elizabeth, who died subsequent to the death of Ann. It does not appear whether Elizabeth died testate or intestate, except by a statement in the account that she died intestate, nor does it appear whether she left debts or funeral expenses with which her estate is chargeable. There is no proof that any part of the estate of Ann ever came to her hands, but it is clear that her estate is entitled to share in it. Under such circumstances, the surrogate was right in not approving any distribution of the estate or any understanding as to how it should be divided as acts of administration.

This accounting is one had under section 2606 of the Code of Civil Procedure. That section gives the surrogate jurisdiction upon the death of an administrator to require his executor or administrator to account for and deliver over the trust estate precisely as if the letters of the deceased administrator had been revoked in his lifetime and he had been called upon to deliver up the assets. His representative stands in his place for the purpose of such accounting and delivery. Matter of Clark, 119 N. Y. 427, 23 N. E. 1052. If there had been a mutual agreement among all the persons interested in the estate as to a distribution thereof out of court, it might properly receive judicial sanction; but, when the distribution has been made without the knowledge of the existence of a person having an interest therein, the surrogate under his limited jurisdiction, when she is discovered and brought in and fails to give her assent to the agreement of the others, could not properly give effect thereto, but is required on the accounting to ascertain the amount of the estate and direct it to be turned over to the successor of the deceased administrator. This is just what the surrogate has done here. In doing this he has made proper deductions for certain payments made by Catherine as administratrix for the benefit of the estate. I think it is unimportant, so far as this appeal is concerned, that Catherine made the payments of the undertaker's and physician's bills for the benefit of Ann's estate out of her individual estate, rather than out of the savings bank account which Catherine caused to be transferred to herself individually after Ann's death. The payments were made in good faith for the benefit of her sister's estate, and her executrix on this accounting is entitled to credit for them. While there are some statements in the findings to the effect that the whole estate should be turned over by the appellant to the respondent, who should, in turn, pay back to the appel-

lant the amount of the undertaker's and doctor's bills, yet the decree as made correctly permits the appellant to pay over the estate less the amount of these bills, and is therefore correct.

The surrogate was also correct in holding that the appellant had no right to continue the administration of the estate of Ann after the death of Catherine, and therefore that she was not entitled to credit on this accounting for the moneys she had paid out for legal services for the benefit of the estate of Ann, for the transfer tax assessed against her interest in the estate, and for legal services in preparing her account. This cannot be a matter of much moment to the appellant for the surrogate has taken evidence concerning these matters and in the decree appealed from has directed that she should be reimbursed for these moneys paid for the benefit of the estate to the extent of $150, and that, when her share in the estate is ascertained, nothing should be deducted therefrom for the transfer tax which it appears she has paid. The rights of the parties appear, therefore, to have been fully protected by the decree as made, except that I think the appellant should have been allowed as executrix of the estate of Catherine the commissions allowed by law for receiving the estate of Ann. Catherine was duly appointed administratrix, and qualified and served as such until she died. No reason appears why such commissions should not have been allowed to her estate.

I think the decree should be modified by allowing to the appellant, as executrix, commissions for receiving the estate, and, as so modified affirmed without costs to either party.

COCHRANE, J., concurs.